UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN KUBICKI & KAREN KUBICKI on behalf of CAROLINE KUBICKI, <br><br> Plaintiffs, <br><br> v. <br><br> MEDTRONIC, INC., <br> MEDTRONIC DIABAETES, <br> MEDTRONIC MINIMED, INC., <br> UNOMEDICAL DEVICES SA DE CV, <br> UNOMEDICAL A/S, and <br> FLEXTRONICS INTERNATIONAL USA, INC., <br><br> Defendants. | CASE NO.: 1:12-cv-734-KBJ |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT BY FLEXTRONICS

Defendant FLEXTRONICS INTERNATIONAL USA, INC. ("Flextronics"), by and through undersigned counsel, Bonner Kiernan Trebach & Crociata, LLP, hereby submits its Memorandum of Points and Authorities in support of its Motion to Dismiss the claims against it under Rule 12(b)(6), Fed. R. Civ. P., on the grounds that such claims are barred by the three-year statute of limitations in the District of Columbia.  The grounds for this motion are set forth below.

### I.  INTRODUCTION

Plaintiffs JOHN KUBICKI and KAREN KUBICKI on behalf of CAROLINE KUBICKI ("The Kubickis"), through their First Amended Complaint, assert claims against Flextronics—an entity heretofore uninvolved with the Kubickis' lawsuit—over three years after the expiration of the statute of limitations, and over six years after the incident giving rise to the claims.

Flextronics denies that its product caused any harm to Ms. Kubicki.[1] Nevertheless, the Kubickis' claims against newly-sued Flextronics are plainly barred by the three-year statute of limitations in the District of Columbia.

## II.     FACTUAL BACKGROUND

Plaintiffs allege that Caroline Kubicki, a Type I diabetic, was severely injured when her insulin pump malfunctioned and she experienced a hypoglycemic event on September 9, 2007. (First Amended Complaint, D.E. 51, ¶ 29.) Plaintiffs allege that Ms. Kubicki was using a Medtronic MiniMed Insulin Pump and Paradigm Infusion Sets to control her insulin levels, and that she had been using that device since 2001. (D.E. 51, ¶ 28.)

Plaintiffs first initiated a lawsuit in the Superior Court for the District of Columbia concerning the September 9, 2007 injuries experienced by Ms. Kubicki on September 3, 2010. That matter was later voluntarily dismissed. (*See* Co-Defendant Medtronic, Inc.'s Motion for Judicial Notice, D.E. 55-2.) The instant lawsuit was subsequently initiated in the Superior Court for the District of Columbia on or about March 29, 2012. Medtronic, Inc., Medtronic Diabetes, and Metronic MiniMed, Inc. (collectively "Medtronic") removed this matter to this Court on May 8, 2012 (D.E. 1) on the basis of diversity jurisdiction.

The Kubickis filed their First Amended Complaint (D.E. 51) on or about January 10, 2014, adding Defendant Flextronics to this lawsuit. The Summons return filed February 19, 2014 (D.E. 57) indicates that Flextronics was served on February 5, 2014. <u>This was the first notice of Ms. Kubicki's injuries that Flextronics received.</u>

---

[1] In fact, preliminary investigation indicates that Ms. Kubicki was not even using a Flextronics product at the time of the hypoglycemic event alleged in the First Amended Complaint.

### III.     ARGUMENT

A court should dismiss a lawsuit for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. where the complaint fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *SPS Limited Partnership, LLLP v. Severstal Sparrows Point, LLC*, 808 F. Supp. 2d 794, 801 (D. Md. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiffs' claims against Flextronics are plainly and completely barred by the Statute of Limitations in the District of Columbia, which expired over three years before they initiated any legal action against Flextronics.  The above-captioned lawsuit first asserted claims against Flextronics on January 10, 2014, six years and four months after Ms. Kubicki's incident.  Accordingly, as explained further below, Plaintiffs' claims against Flextronics are barred and must be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P.

#### A.     The District of Columbia Statute of Limitations Bars Plaintiffs' Claims.

Actions for negligence, strict liability or other torts must be brought within three years after a cause of action accrues.  *See*  D.C. Code § 12-301(8) ("Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:  . . . (8) for which a limitation is not otherwise specially prescribed—3 years . . . ."); *Shehyn v. D.C.*, 392 A.2d 1008, 1013 (D.C. 1978); *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 994 (D.C. 1978).

Plaintiffs' right of action accrued on the date that Ms. Kubicki suffered her hypoglycemic event on September 9, 2007. The statute of limitations began to run on that date, and expired three years later, on September 9, 2010. The first assertion of any claim against Flextronics was January 10, 2014—more than six years after the action accrued and more than three years after the limitations period expired. Accordingly, Plaintiffs' claims against Flextronics are barred as a matter of law and must be dismissed with prejudice.

### B. The "Discovery Rule" Does Not Afford Plaintiffs Three Extra Years under the Statute of Limitations.

Plaintiffs argue in their opposition to Medtronic's motion to dismiss that the so-called "discovery rule" applies here because they could not identify Flextronics before the FDA recall notice of June 7, 2013 (Exhibit E to the First Amended Complaint, D.E. 51-5) was issued. Such an application of the discovery rule would effectively vitiate the statute of limitations.

As explained above, actions for negligence, strict liability or other torts must be brought within three years after a cause of action accrues. *See* D.C. Code § 12-301(8); *Shehyn v. D.C.*, 392 A.2d 1008, 1013 (D.C. 1978); *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 994 (D.C. 1978). In some cases, "in which the relationship between the tortious conduct and subsequent injury may be obscure, a 'discovery rule' is applied to begin the statute of limitations' running at the time when a prospective plaintiff knows or should know through the exercise of due diligence of her rights to recover, or, in other words, when she is put on 'inquiry notice' of the existence of actionable harm." *Baker v. A.H. Robbins Co.*, 613 F. Supp. 994, 996 (D.D.C. 1985). In *Baker*, the plaintiff used a Dalkon Shield intrauterine device from 1971 until April 1975, when it had to be removed due to pelvic inflammatory disease. Later, in January 1980, the plaintiff read articles about the Dalkon Shield and sent a January 3, 1980 letter to the manufacturer claiming entitlement to compensation. Later in 1980, she was paid $15,000 in

4

compensation. In January 1981, the plaintiff underwent a laparoscopy that confirmed that she was infertile. On November 25, 1983, the plaintiff initiated the lawsuit "demanding further compensation for her belatedly discovered inability to bear children." *Id*. at 995. The court in Baker concluded that the plaintiff had reason to know of her injury (infertility) by the time she wrote to the Dalkon Shield manufacturer in early 1980, so that at the latest, the statute of limitations began to run at that time. "The fact that she did not then comprehend the full extent of all possible *sequelae* does not matter, for the law of limitations requires only that she have inquiry notice of the existence of a cause of action for personal injury." *Id*. at 996.

In *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473 (D.D.C. 1998), the court concluded that the plaintiff had reason to know of the existence of a cause of action against a tobacco company by—at the latest—1992, when she was diagnosed with throat cancer. The court considered her diagnosis with emphysema in the late 1980s and the Surgeon General's warnings on cigarette packages beginning in 1984. The court rejected the plaintiff's argument that her claim only arose after the 1997 release of tobacco-company documents revealing that they knew nicotine was addictive and that they manipulated the amount of nicotine in cigarettes. *Id*.

The District of Columbia Court of Appeals further explained the effect of the discovery rule in *Colbert v. Georgetown University*, 641 A.2d 469 (D.C. 1994), a lawsuit alleging a failure to diagnose and treat breast cancer. The factual background in the *Colbert* case is somewhat involved, but the key dates are as follows:

| July 1982 | Ms. Colbert discovers lump in left breast |
|---|---|
| August 9, 1982 | Biopsy positive for cancer; physician recommends radical mastectomy |
| August 13, 1982 | Plaintiff consults with surgeon who recommends lumpectomy instead of radical mastectomy |
| August 19, 1982 | Surgeon performs lumpectomy |
| October 4 & 5, 1982 | Additional lumps biopsied; positive for cancer |

5

| October 21, 1982 | Plaintiff undergoes radical mastectomy of left breast; reports that he "had never seen so much tumor mass"; admitted that first surgeon performed wrong surgery, and that survival chance decreased from 90% to 10%; aggressive chemotherapy and radiation treatment needed |
|---|---|
| March 7, 1983 | Plaintiff undergoes prophylactic mastectomy of right breast at a different hospital; Plaintiff's husband believed this surgery would not have been necessary if correct procedure had been done on August 19, 1982 |
| August 1986 | Ms. Colbert experienced low back pain; examination revealed that cancer had metastasized to spine and hip |
| September 1986 | Further cancer treatment for cancer in spine and hip |
| August 31, 1989 | Lawsuit filed |
| January 4, 1992 | Ms. Colbert died |

In evaluating the above series of events, the court considered the following principles:

> Where the fact of an injury can be readily determined, a claim accrues for purposed of the statute of limitations at the time the injury actually occurs. Where the relationship between the fact of injury and the alleged tortious conduct may be obscure, we determine when the statute of limitations begins to run by applying the "discovery rule." Under that rule, a medical malpractice claim does not accrue until the patient has "discovered or reasonably should have discovered all of the essential elements of her possible cause of action, i.e., duty, breach, causation and damages." Accordingly, Ms. Colbert's right of action did not accrue until she knew or should have known that she had suffered injury as a result of the defendants' negligence.

*Id*. at 472-3 (citations omitted). Moreover, the discovery rule does not permit a plaintiff "who has information regarding a defendant's negligence, and who knows that she has been significantly injured" to wait before brining a lawsuit to see whether other injuries develop. "[I]t is not necessary that all or even the greater part of the damages have to occur before the cause of action arises. *Any appreciable harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.*" *Id.* at 473 (emphasis in original) (citation omitted).

The court explained that the plaintiff's injury and claim in *Colbert* arose in 1982 or 1983. The plaintiffs, however, argued that the court should rule as if a new claim arose with the 1986

6

metastasis. The court rejected this argument, holding that the claim accrued in 1982 when the Colberts were told that there was a 90% probability that her cancer would spread. She could have sued in 1983 for injuries related to chemotherapy and radiation, the prophylactic mastectomy and other injuries. *Id*. at 475.

In each of the three cases above, the court held that the plaintiff's cause of action accrued at earliest time that the plaintiff (a) knew she was injured and (b) had reason to know of the cause. In *Baker*, the plaintiff knew or should have known of her claim when she read the magazine article concerning problems with the Dalkon Shield. In *Smith*, the plaintiff knew that cigarettes were the cause of her throat cancer at the time of diagnosis because of the earlier Surgeon General's warning labels. Finally, in *Colbert*, the claim accrued when a surgeon informed the plaintiff that her first breast cancer surgery was not the correct procedure and that she would require additional surgery.

Here, the Plaintiffs likely knew that Ms. Kubicki had suffered an injury related to her insulin pump or infusion set—or both—almost immediately upon learning that her loss of consciousness was related to her low blood sugar level. Plaintiffs certainly reached that conclusion when they initiated their lawsuit on September 3, 2010, almost three full years after the September 9, 2007 incident. Moreover, Plaintiffs were aware—or should have been aware— that on June 29, 2009 Medtronic issued a public recall for the "Lot 8" batch of its infusion sets. (*See* Exhibit A to Plaintiff's Opposition to Medtronic's Motion to Dismiss, D.E. 56.) That recall notice, while limited to the "Lot 8" batch of infusion sets, identifies problems associated with the infusion sets. Specifically, it states:

> Reason for Recall:
>
> These infusion sets may not allow the insulin pump to vent air pressure properly. This could potentially result in the device

> delivering too much or too little insulin and may cause serious injury or death.

Plaintiffs had access to this notice which, at a minimum, clearly placed them on inquiry notice four years and six months before Plaintiffs filed their First Amended Complaint naming Flextronics for the first time. If Plaintiffs were unable to ascertain the identity of all companies that may have supplied components to Medtronic for the device that Ms. Kubicki used, which would include the infusion set, they could have taken discovery from Medtronic on that question in the initial lawsuit. Instead, Plaintiffs did not even make any allegations with regard to the infusion sets until they filed their First Amended Complaint on January 30, 2014.

In their Opposition to Medtronic's motion to dismiss, Plaintiffs argue that they could not have known that the infusion set was "the cause of Ms. Kubicki's injuries until the recall was issued in June 2013." (Plaintiff's Opposition to Medtronic's Motion to Dismsis, D.E. 56, at 9.) However, based on their original complaint filed on September 3, 2010, Plaintiffs believed that Ms. Kubicki's insulin pump was defective. (*See* Medtronic's Motion for Judicial Notice, D.E. 55-2, Exhibit A at ¶¶ 16, 19.) The infusion set was used in conjunction with the insulin pump. (Plaintiff's Opposition to Medtronic's Motion to Dismsis, D.E. 56, at 2-3.)

Planitiffs had to know that if Ms. Kubicki was injured as a result of receiving too much or too little insulin from the insulin dispensing apparatus she was using at the time, the cause could be the pump, the infusion set, or both. This is especially true since joint testing was conducted on the pump on August 23, 2010, and Plaintiffs' expert was unable to identify any defect in it. Clearly, the testing places the Plaintiffs on inquiry notice that, if the pump was not defective, the infusion set may have been the cause of the failure.

Under the circumstances here, Ms. Kubicki's injuries are described in the First Amended Complaint as severe from the moment of her September 9, 2007 incident. There was no

progression of events as in the case of Ms. Colbert.  At that time, Plaintiffs had three years to identify the potentially culpable parties and to file their claims.  Even if the Plaintiffs did not know the cause of the injury immediately, they had ample information to create inquiry notice as to the cause well within three years from the September 9, 2007 incident.  Thus, the conclusion that the Plaintiffs' claims are untimely is inescapable.  Accordingly, Plaintiffs' claims against Flextronics must be dismissed with prejudice.

## IV.     CONCLUSION

Plaintiffs' claims against Flextronics are untimely because they were filed over three years after the expiration of the three-year statute of limitations in the District of Columbia.  There is no reasonable question of when Plaintiffs should have discovered the injury; indeed, they sued the company whose name appears on the device that Ms. Kubicki used within the limitations period.  Accordingly, the claims against Flextronics are untimely and must be dismissed.

WHEREFORE, for the foregoing reasons, Defendant FLEXTRONICS INTERNATIONAL USA, INC. respectfully requests that the Court enter an order of dismissal with prejudice for all claims against FLEXTRONICS INTERNATIONAL USA, INC.

DATED this 14th day of March 2014.

Respectfully submitted,

/s/ *William H. White Jr.*
JOSEPH J. BOTTIGLIERI (DC Bar No. 418523)
WILLIAM H. WHITE JR. (DC Bar No. 461341)
**BONNER KIERNAN TREBACH & CROCIATA, LLP**
1233 20th Street, NW
8th Floor
Washington, DC  20036
Tel.: 202-712-7000
Fax: 202-712-7100

Email: jbottiglieri@bonnerkiernan.com
Email: wwhite@bonnerkiernan.com
***Counsel for Defendant***
***Flextronics International USA, Inc.***